```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
  GCCA, LLC,

                      Plaintiff,                              21-CV-5022 (JGK) (BCM)

        -against-                                             ORDER

  MACCG LLC,

                      Defendant.
----------------------------------------------------------
```

**BARBARA MOSES, United States Magistrate Judge.**

For the reasons discussed during yesterday's discovery conference and detailed below, the letter-motion (Def. Ltr.) (Dkt. No. 35) filed by defendant and counterclaimant MACCG LLC (MACCG) to quash the subpoena (Subpoena) (Def. Ltr. Ex. A) served by plaintiff and counterdefendant GCCA, LLC (GCCA) on non-party Investors Bank is DENIED; however, the subpoena will be MODIFIED to the extent set forth below.

Both parties operate Greek restaurants, using the mark TAVERNA KYCLADES, which GCCA registered in 2014. *See* Compl. (Dkt. No. 1) ¶ 16 & Ex. 1. Additionally, there is overlap in ownership. Ardian Skenderi, who with his wife owns and controls plaintiff GCCA, is also a 50% owner of defendant MACCG. The remaining 50% is owned by William Pappas. *See* Ans. & Countercl. (Dkt. No. 10) ¶ 10. In this action, GCCA asserts claims sounding in trademark infringement and unfair competition, alleging that in 2020 – after a business dispute between the principals – GCCA revoked its "consent for [MACCG] to use the TAVERNA KYCLADES and Design Mark" and demanded that MACCG "cease using that mark," but MACCG wrongfully continued to use the mark. Compl. ¶¶ 31-34.

MACCG has counterclaimed for a declaratory judgment of non-infringement and cancellation of plaintiff's trademark registration. MACCG alleges that it "lawfully acquired all rights to use the TAVERNA KYCLADES name from GCCA" when MACCG was formed in 2013,

for the purpose of operating "a new TAVERNA KYCLADES restaurant in the East Village area of Manhattan." Ans. & Countercl. ¶¶ 1, 17. According to MACCG, Mr. Pappas contributed $1 million to the new venture and Mr. Skenderi, "[i]n lieu of a capital contribution," contributed the mark (which was not then registered), on the understanding that both men would "receive distributions annually if the East Village restaurant was profitable." *Id.* ¶¶ 13-14, 18, 54. In the alternative, MACCG alleges, it was granted "an implied irrevocable, perpetual, royalty-free license" to use the mark. *Id.* ¶ 59. MACCG further alleges that Mr. Skenderi continues to receive "equal distributions of the profits," *id.* ¶¶ 21, 40, as per the principals' agreement. There was no written trademark license or assignment, and there is no written operating agreement for MACCG. *Id.* ¶¶ 17-20.

MACCG does not dispute that its finances are relevant to the parties' claims and defenses. In its Rule 26(a)(1) disclosures, MACCG stated that it would support its claims with, *inter alia*, "documents, information, and/or correspondence related to MAGGC's finances, including any annual distributions made to the two members of MACCG." *See* Pl. Ltr. (Dkt. No. 39) at 2. Some financial documents have already been produced in discovery, either by MAGGC or by its accounting firm, Kirkiles & Kotiadis LLP. *Id.* The Court was informed during the discovery conference that GCCA has received K-1 statements issued by MACCG for the period 2013-2020, W-2s for the period 2014-2020, and unaudited profit and loss statements (P&Ls) for certain years (but not others) during the period 2016-20. GCCA has not yet, however, received the underlying financial documents on which the tax forms and the P&Ls were based – such as banking records – from any party or non-party source.

Investors Bank is one of three banks at which (according to GCCA) MACCG has established business accounts. The Subpoena seeks substantially all records relating to those

accounts, including any related debit cards and safe deposit boxes, from 2013 to the present. Plaintiff argues that the documents sought are relevant to the merits of the trademark dispute – because MACCG alleges that the TAVERNA KYCLADES mark was transferred (or licensed) to it as part of the same oral contract governing contributions and distributions – and are equally relevant to damages. Def. Ltr. at 1-4; *see also* 15 U.S.C. § 1117(a) (on proof of infringement, trademark owner may recover infringer's "profits"). In their Joint Rule 26(f) Report and Proposed Discovery Plan, which was so-ordered by the district judge on August 30, 2021 (Sched. Order) (Dkt. No. 13), the parties elected *not* to conduct discovery in "phases," Sched. Order ¶ II(1), meaning that there is no prohibition on GCCA conducting damages discovery now.

In support of its motion to quash, MACCG argues that the information sought "has no relationship whatsoever to the claims and defenses at issue in the instant litigation[.]" Def. Ltr. at 3. In fact, as noted above, MACCG's finances are relevant both to liability and – plainly – to damages. *See, e.g.*, *ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc.*, 2009 WL 105503, at *4-5 (S.D.N.Y. Jan. 14, 2009) (compelling trademark infringement defendant to produce "[c]opies of all bank statements, deposit tickets and cancelled checks" for the relevant period and noting that the information sought is "central to the issue of Plaintiffs' asserted damages") (alteration in original); *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 104 (S.D.N.Y. 2015) (ordering Bank of China to comply with prior subpoenas served upon it for the financial records of various China-based defendants in counterfeiting action under the Lanham Act).

MACCG additionally argues (somewhat inconsistently) that while there is some financial information "relevant to GCCA's trademark infringement claims," that information has already been produced, in the form of the K-1s and W-2s, "which relate to the Parties' intentions and

3

understandings relating to the business and trademark at issue." Def. Ltr. at 2. GCCA is not required, however, to limit its financial discovery to the documents MACCG wants it to see, or to accept the contents of those documents at face value. Moreover, while the K-1s presumably report contributions by and distributions to the two principals, such forms typically do not reveal an LLC's revenues, expenses, or profits, all of which are relevant to damages and may not be accurately reported in the unaudited P&Ls (which, in any event, do not appear to exist for all relevant years). I note as well that no claim of burden has been made by Investors Bank or could be made by MACCG. I therefore conclude that – at least in broad outline – the financial information that GCCA seeks from MACCG's bank is within the scope of Fed. R. Civ. P. 26(b)(1), in that it is relevant to the claims and defenses in this action and proportional to the needs of the case.

MACCG further contends that the information sought is "private, confidential, and proprietary" to MACCG. Def. Ltr. at 2; *see also* Def. Reply Ltr. (Dkt. No. 42) at 3 (characterizing the bank records sought as "highly sensitive"). This portion of its argument, however, is couched entirely in generalities.[1] Defendant fails to demonstrate any concrete harm that is likely to flow from the production of its bank records either to GCCA or to GCCA's principal, Mr. Skenderi, who – as a 50% owner of MACCG – may well have an independent right, in that capacity, to review the same records. I note as well that the parties' Stipulated Protective Order (Dkt. No. 23) permits either party to designate discovery documents "Confidential" or (if warranted) "Attorneys' Eyes Only" and thereby restrict their use. MACCG has thus failed to establish that the Subpoena

---

[1] Moreover, the case that MACCG cites for the confidentiality point (Def. Reply Ltr. at 3) is inapposite. In *Arias-Zeballos v. Tan*, 2007 WL 210112 (S.D.N.Y. Jan. 25, 2007), the court quashed a subpoena demanding the production of documents revealing the price that the individual defendant paid for his apartment – an issue that the Court had already stricken from the plaintiff's complaint because it was "not relevant to the claims she has made in this action." *Id.* at *2.

should be quashed or modified on confidentiality grounds. *See generally McDonnell v. First Unum Life Ins. Co.*, 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012) (noting that a party seeking a protective order must be "able to show that a clearly defined, specific and serious injury will occur in the absence of such an order"; thus, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, are not sufficient to satisfy the burden") (internal quotation marks and citations omitted; alteration in original).

MACCG is correct, however, that the Subpoena as written is overbroad. Portions of it seek detail well beyond that which could be relevant either to trademark infringement liability or to potential infringement damages. For example, ¶ 8 of Schedule A to the Subpoena asks Investors Bank to produce documents sufficient to identify "any safety deposit box held by MACCG," as well as the date the box was opened, the names of the individuals who opened it, and a list of the individuals with "authorized access" to the box. At the discovery conference, GCCA's attorney was unable to articulate any non-speculative theory of relevance for this information. The following paragraphs are similarly beyond even the broad scope of relevance afforded by Rule 26(b)(1): Paragraphs 1(d), 1(e), 1(f), 5, and 6 (except for "copies of all monthly statements" for debit cards issued against MACCG's Investors Bank account(s), which are discoverable).

For these reasons, it is hereby ORDERED that the Subpoena is MODIFIED to seek only the documents described in paragraphs 1(a)-(c), 2, 3, 4, 6 (limited to copies of all monthly statements for debit cards issued against MACCG's Investors Bank account(s)), and 7 of Schedule A thereto. In all other respects MACCG's motion (Dkt. No. 35) is DENIED.

Dated: New York, New York  
       March 22, 2022

SO ORDERED.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**